IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ABBOTT LABORATORIES and ADVANCED CARDIOVASCULAR SYSTEM, INC., <br><br> Plaintiffs, <br><br> v. <br><br> JOHNSON AND JOHNSON, INC. and CORDIS CORPORATION, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) C. A. No. 06-613-SLR ) ) ) ) ) ) |

### NOTICE OF SERVICE OF SUBPOENAS

PLEASE TAKE NOTICE that on February 8, 2007, Plaintiffs Abbott Laboratories and Advanced Cardiovascular Systems, Inc. issued the attached *subpoenas duces tecum* and *ad testificandum* for service on Jan David Wald and A.G. Edwards & Sons, Inc..

Of Counsel:
Edward A. Mas II
Leland G. Hansen
Sandra A. Frantzen
Christopher J. Buchko
McAndrews, Held & Malloy, Ltd.
500 West Madison Street, Suite 3400
Chicago, Illinois 60661
(312) 775-8000

/s/ F. Cottrell III
Frederick L. Cottrell III (#2555)
cottrell@RLF.com
Anne Shea Gaza (#4093)
gaza@RLF.com
Richards, Layton & Finger
One Rodney Square
920 N. King Street
Wilmington, Delaware 19899
(302) 651-7700

*Attorneys for Plaintiffs*
*Abbott Laboratories and Advanced*
*Cardiovascular Systems, Inc.*

Date: February 9, 2007

RLF1-3114064-1

AO 88 (Rev 1/94) Subpoena in a Civil Case

# Issued by the
# UNITED STATES DISTRICT COURT
### For the Eastern District of Missouri

ABBOTT LABORATORIES and
ADVANCED CARDIOVASCULAR
SYSTEMS, INC.,
       Plaintiffs,

v.

JOHNSON and JOHNSON, INC. and,
CORDIS CORPORATION,
       Defendants.

SUBPOENA IN A CIVIL CASE

CASE NUMBER: 06-00613-SLR

United States District Court
For The District of Delaware

TO:   A.G. Edwards & Sons, Inc.
      c/o Trish Unterberg (Records Custodian)
      One North Jefferson
      Saint Louis, MO 63103

[ ] YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
| --- | --- |
|  | DATE AND TIME |

[ ] YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

|  | DATE AND TIME |
| --- | --- |

[X] YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects): **See Schedule A attached hereto.**

| A.G. Edwards & Sons, Inc.<br>One North Jefferson<br>Saint Louis, MO 63103 | DATE AND TIME<br>February 22, 2007 at 9:00 am. |
| --- | --- |

[ ] YOU ARE COMMANDED to produce and permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
| --- | --- |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| Issuing Officer Signature and Title (Indicate if attorney for Plaintiff or Defendant)<br>*[signature]*    Attorney for Plaintiffs | Date<br>02/08/07 |
| --- | --- |
| Issuing Officers Name, Address, and Phone Number    Leland Hansen<br>McAndrews, Held & Malloy, Ltd. - (312) 775-8000<br>500 West Madison, Suite 3400<br>Chicago, IL 60661 | |

(See Rule 45, Federal Rules of Civil Procedure Parts C & D on Reverse)

---

[1] If action is pending in district other than district of issuance, state district under case number.

AO 88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Parts C & D

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS
  (1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and a reasonable attorney's fee.
  (2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.
  (2)(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection is made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.
  (3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
    (i) fails to allow reasonable time for compliance;
    (ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or
    (iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or
    (iv) subjects a person to undue burden.
  (B) If a subpoena
    (i) requires disclosure of a trade secret or other confidential research, development, of commercial information, or
    (ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
    (iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.
(d) DUTIES IN RESPONDING TO SUBPOENA.
  (1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.
  (2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim

## SCHEDULE A

### DEFINITIONS AND INSTRUCTIONS

1. The term "Abbott" shall mean Abbott Labs and ACS.

2. The term "Abbott Labs" shall mean Abbott Laboratories.

3. The term "ACS" shall mean Advanced Cardiovascular Systems, Inc.

4. The term "Johnson & Johnson" shall mean Johnson and Johnson, Inc. and Cordis Corporation.

5. The term "Guidant" shall mean Guidant Corporation and ACS before its acquisition by Abbott.

6. The term "Boston Scientific" shall mean Boston Scientific Corporation.

7. Each of the terms "Abbott," "Abbott Labs," "ACS," "Johnson & Johnson," "Guidant," and "Boston Scientific" shall include the entity or entities as defined in numbered paragraphs 1-6 above and the entity's or entities' related or foreign or U.S. associated companies, including without limitation all of their corporate locations, predecessors, subsidiaries, parents, divisions, and affiliates, whether or not incorporated or not, and all past or present directors, officers, agents, representatives, employees, consultants, attorneys, entities acting in joint-venture or partnership relationships, and others acting on behalf of the entity or entities.

8. The term "FTC" shall mean the United States Federal Trade Commission.

9. The term "Patent Office" shall mean the United States Patent and Trademark Office.

10. The term "person" shall mean natural persons and corporations, firms, associations, organizations, joint ventures, trusts, partnerships, or other collective organizations

or entities and the acts and knowledge of a "person" as used herein are defined to include acts and knowledge of directors, officers, employees, agents, representatives, and attorneys acting on behalf of such "person."

11. The term "764 patent" shall mean U.S. Patent No. 6,585,764.

12. The term "796 patent" shall mean U.S. Patent No. 6,776,796.

13. The term "536 patent" shall mean U.S. Patent No. 6,808,536.

14. The term "patents-in-suit" shall mean the 764 patent, the 796 patent, and the 536 patent.

15. The term "Wright and Falotico patents" shall mean each of the patents-in-suit and any and all U.S. patents and patent applications that claim priority to any patent-in-suit, or any application from which any patent-in-suit claims priority, or from which any patent-in-suit claims priority, or are otherwise related to any of the patents-in-suit, including any continuation, continuation-in-part, parent, division, reexamination, reissue, extension or renewal patents or patent applications of any the patent-in-suit.

16. The term "communications" shall mean the transmittal of information including but not limited to transmittals in the form of facts, ideas, inquiries or otherwise.

17. The terms "and" and "or" shall be construed either disjunctively or conjunctively, whichever makes the request most inclusive.

18. Each of the terms "any," "all," and "each" shall be construed as "any, all, and/or each."

19. The terms "including" and "include" shall be construed in such a way as to suggest or provide an example or examples. The terms "including" and "include" shall not be

construed in such a way as to limit or confine the broader term or concept for which a suggestion or example is being given.

20.  The terms "concerning," "regarding" or "relating to" shall be construed broadly, and shall mean concerning, regarding, relating to, referring to, mentioning, reflecting, pertaining to, evidencing, involving, describing, depicting, discussing, commenting on, embodying, responding to, supporting, contradicting, or constituting (in whole or part), as the context makes appropriate.

21.  The use of the singular form of any word includes the plural and vice-versa.

## REQUESTS FOR PRODUCTION

1.  All documents and things concerning any of the following:

   a.  any Wright or Falotico patent or patent application;

   b.  any patent or patent application relating to rapamycin, everolimus or any other "-olimus" or "-limus"; and

   c.  any patent or patent application relating to J&J's or Boston Scientific's bid(s) for Guidant, including all documents and things concerning a patent license from J&J to Abbott.

2.  All documents and things concerning antitrust approval for J&J's or Boston Scientific's bid(s) for Guidant.

3.  All documents and things concerning any of the following:

   a.  communications to or from J&J from November 1, 2005 until April 30, 2006 relating to J&J's or Boston Scientific's bid(s) for Guidant;

   b.  information received or obtained by you from November 1, 2005 until April 30, 2006 relating to J&J's or Boston Scientific's bid(s) for Guidant; and

3

      c.      information received or obtained by you from November 1, 2005 until April 30, 2006 regarding preventing XIENCE V or any rapamycin eluting, or everolimus eluting, or "-limus" eluting, or "-olimus" eluting stent from being made, used, marketed or sold.

4.      All documents and things concerning any of the following:

      a.      A January 23, 2006 A.G. Edwards & Sons, Inc. report entitled "Healthcare Industry Note: The Game May Be Far From Over";

      b.      A March 27, 2006 A.G. Edwards & Sons, Inc. report entitled "Newsbeats: How's This?"; and

      c.      A January 23, 2006 International Herald Tribune headlined "J&J works to discredit rival offer for Guidant" (attached hereto)

including any documents and things relied on, considered, identified in, or reviewed in connection with the preparation of the January 23, 2006 report, the March 27, 2006 report, or the January 23, 2006 International Herald Tribune article.

4

# INTERNATIONAL
# Herald Tribune

## J&J works to discredit rival offer for Guidant

**By Avram Goldstein Bloomberg News**
MONDAY, JANUARY 23, 2006

WASHINGTON Johnson & Johnson, facing a deadline on Tuesday for raising its bid to acquire the cardiac device maker Guidant, is trying to sow doubts among investors about Boston Scientific's rival offer, according to analysts.

Johnson & Johnson, the world's biggest maker of medical devices, and its advisers told securities analysts last week that Boston Scientific would borrow too much for the deal, according to analysts at Prudential Equity Group and A.G. Edwards.

J&J also said Boston Scientific had been making unrealistic financial projections to justify its $27 billion offer to buy Guidant, almost $3 billion more than Johnson & Johnson's.

"J&J is communicating to the Street that Boston Scientific's $80-a-share offer for Guidant is fraught with uncertainty," Lawrence Biegelsen, an analyst with Prudential in New York, said in a note to clients sent on Friday. The campaign, he said, suggests "that J&J is still very interested in acquiring Guidant and that J&J will likely increase its offer at least one more time."

The Guidant transaction would be the biggest purchase of a medical device company. Guidant, the second-largest maker of implantable defibrillators and pacemakers, behind Medtronic, is developing a cardiac stent that would pose a competitive threat to rival products of J&J and Boston Scientific, the world's biggest maker of heart stents, tiny metal sleeves used to clear artery blockages.

A spokesman for J&J, Jeffrey Leebaw, and for Guidant, Steven Tragash, declined to comment.

J&J shares fell $1.37, or 2.2 percent, to close last week at $60.80 in New York Stock Exchange composite trading. Guidant dropped 17 cents, to $75.95. Boston Scientific declined 36 cents, or 1.5 percent, to close at $23.59.

Guidant said Tuesday that Boston Scientific's offer of about $27 billion, or $80 a share, of which $42 would be in cash and $38 in stock, was "superior" to J&J's bid of $24.2 billion, or $71 a share, consisting of $40.52 in cash and the rest in J&J shares.

Johnson & Johnson's campaign consists of telling analysts and shareholders that Boston Scientific is in over its head and is tempting patent litigation that may undercut Boston Scientific's plans.

"They're trying to tell all of us that there are patents out there that they have that they feel can stop Boston Scientific," said Jan David Wald, an analyst with A.G. Edwards. Wald said he had been called by a Johnson & Johnson employee, whom he declined to name.

Johnson & Johnson told analysts it was considering filing patent infringement lawsuits over stent drug coatings to keep Boston Scientific and its bidding partner, Abbott Laboratories, from profiting from the new Guidant devices, according to Biegelsen of Prudential.

Drug coatings on stents are designed to keep tissue growth from clogging blood vessels again.

Abbott agreed to contribute $6.4 billion to the Boston Scientific bid and acquire Guidant's vascular business including the new cardiac stent.

Abbott shares lost $1.19, or 2.9 percent, on Friday to close the week at $40.35.

Patent infringement lawsuits over stent drug coatings have "no bearing on our proposed acquisition of Guidant," a spokesman for Boston Scientific, Paul Donovan, said. "Unfortunately, threats of legal action are commonplace in our industry."

Boston Scientific and J&J have been fighting in court for years over patent-infringement cases related to stent design. At the moment, the two companies are alone in the U.S. stent market, with Boston Scientific holding a 55 percent share.

Abbott, Guidant and Medtronic are all developing competing products coated with drugs similar to the one that Johnson & Johnson's stent uses.

The potential for Johnson & Johnson to prevent Abbott and Boston Scientific from marketing Guidant's next-generation heart stent "could give the Guidant board pause for approving a Boston Scientific-Guidant merger," Biegelsen said. "J&J claims that two of its patents may be infringed if a company tries to launch a drug-eluting stent coated with" Abbott's zotarolimus and Guidant's everolimus, he wrote.

After the Guidant board declared Boston Scientific's bid superior, Johnson & Johnson issued a statement calling the proposal a "highly dilutive and leveraged transaction based on extremely aggressive business projections."

The statement said the Boston Scientific bid "will not provide $80 per share in value to Guidant shareholders."

Boston Scientific initially bid $25 billion on Jan. 8, a month after declaring its intention to make an offer.

ADVERTISER LINKS

**Pacemaker Recall List**
List of over 40 Guidant pacemakers that have been recalled
www.schmidtandclark.com/Guidant

**Guidant Recall Attorneys**
Free Nationwide Review Talk to an attorney. Toll-free 1 800 223-3784
www.pulaskilawfirm.com

**Guidant Lawsuit**
News on the Guidant recall of heart defibrillator and pacemaker devices
guidant.martinandjones.com

**St. Jude Symmetry Device**
Problem w/artery clogging after a bypass graft? Call for free consult
www.copretz.com

IHT    Copyright © 2006 The International Herald Tribune | www.iht.com

AO 88 (Rev 1/94) Subpoena in a Civil Case

# Issued by the
# UNITED STATES DISTRICT COURT
For the District of Massachusetts

SUBPOENA IN A CIVIL CASE

ABBOTT LABORATORIES and
ADVANCED CARDIOVASCULAR
SYSTEMS, INC.,
        Plaintiffs,

v.

JOHNSON and JOHNSON, INC. and,
CORDIS CORPORATION,
        Defendants.

CASE NUMBER:[1] 06-00613-SLR

United States District Court
For The District of Delaware

TO:    Jan David Wald
        1 Boston Place, Suite 3520
        Boston, Massachusetts 02108

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
| --- | --- |
|  | DATE AND TIME |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| 1 Boston Place, Suite 3520<br>Boston, Massachusetts 02108 | DATE AND TIME<br>March 1, 2007 at 9:00 am. |
| --- | --- |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects): **See Schedule A attached hereto.**

| 1 Boston Place, Suite 3520<br>Boston, Massachusetts 02108 | DATE AND TIME<br>February 22, 2007 at 9:00 am. |
| --- | --- |

☐ YOU ARE COMMANDED to produce and permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
| --- | --- |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

Issuing Officer Signature and Title (Indicate if attorney for Plaintiff or Defendant)
        *[signature]*    Attorney for Plaintiffs

Date: 02/08/07

Issuing Officers Name, Address, and Phone Number
Leland Hansen
McAndrews, Held & Malloy, Ltd. - (312) 775-8000
500 West Madison, Suite 3400
Chicago, IL 60661

(See Rule 45, Federal Rules of Civil Procedure Parts C & D on Reverse)

---

[1] If action is pending in district other than district of issuance, state district under case number.

AO 88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED |  |  |
| SERVED ON (PRINT NAME) |  | MANNER OF SERVICE |
| SERVED BY (PRINT NAME) |  | TITLE |

### DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                 DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(2)(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection is made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## SCHEDULE A

## DEFINITIONS AND INSTRUCTIONS

1. The term "Abbott" shall mean Abbott Labs and ACS.

2. The term "Abbott Labs" shall mean Abbott Laboratories.

3. The term "ACS" shall mean Advanced Cardiovascular Systems, Inc.

4. The term "Johnson & Johnson" shall mean Johnson and Johnson, Inc. and Cordis Corporation.

5. The term "Guidant" shall mean Guidant Corporation and ACS before its acquisition by Abbott.

6. The term "Boston Scientific" shall mean Boston Scientific Corporation.

7. Each of the terms "Abbott," "Abbott Labs," "ACS," "Johnson & Johnson," "Guidant," and "Boston Scientific" shall include the entity or entities as defined in numbered paragraphs 1-6 above and the entity's or entities' related or foreign or U.S. associated companies, including without limitation all of their corporate locations, predecessors, subsidiaries, parents, divisions, and affiliates, whether or not incorporated or not, and all past or present directors, officers, agents, representatives, employees, consultants, attorneys, entities acting in joint-venture or partnership relationships, and others acting on behalf of the entity or entities.

8. The term "FTC" shall mean the United States Federal Trade Commission.

9. The term "Patent Office" shall mean the United States Patent and Trademark Office.

10. The term "person" shall mean natural persons and corporations, firms, associations, organizations, joint ventures, trusts, partnerships, or other collective organizations

or entities and the acts and knowledge of a "person" as used herein are defined to include acts and knowledge of directors, officers, employees, agents, representatives, and attorneys acting on behalf of such "person."

11.  The term "764 patent" shall mean U.S. Patent No. 6,585,764.

12.  The term "796 patent" shall mean U.S. Patent No. 6,776,796.

13.  The term "536 patent" shall mean U.S. Patent No. 6,808,536.

14.  The term "patents-in-suit" shall mean the 764 patent, the 796 patent, and the 536 patent.

15.  The term "Wright and Falotico patents" shall mean each of the patents-in-suit and any and all U.S. patents and patent applications that claim priority to any patent-in-suit, or any application from which any patent-in-suit claims priority, or from which any patent-in-suit claims priority, or are otherwise related to any of the patents-in-suit, including any continuation, continuation-in-part, parent, division, reexamination, reissue, extension or renewal patents or patent applications of any the patent-in-suit.

16.  The term "communications" shall mean the transmittal of information including but not limited to transmittals in the form of facts, ideas, inquiries or otherwise.

17.  The terms "and" and "or" shall be construed either disjunctively or conjunctively, whichever makes the request most inclusive.

18.  Each of the terms "any," "all," and "each" shall be construed as "any, all, and/or each."

19.  The terms "including" and "include" shall be construed in such a way as to suggest or provide an example or examples. The terms "including" and "include" shall not be

construed in such a way as to limit or confine the broader term or concept for which a suggestion or example is being given.

20. The terms "concerning," "regarding" or "relating to" shall be construed broadly, and shall mean concerning, regarding, relating to, referring to, mentioning, reflecting, pertaining to, evidencing, involving, describing, depicting, discussing, commenting on, embodying, responding to, supporting, contradicting, or constituting (in whole or part), as the context makes appropriate.

21. The use of the singular form of any word includes the plural and vice-versa.

## REQUESTS FOR PRODUCTION

1. All documents and things concerning any of the following:

    a. any Wright or Falotico patent or patent application;

    b. any patent or patent application relating to rapamycin, everolimus or any other "-olimus" or "-limus"; and

    c. any patent or patent application relating to J&J's or Boston Scientific's bid(s) for Guidant, including all documents and things concerning a patent license from J&J to Abbott.

2. All documents and things concerning antitrust approval for J&J's or Boston Scientific's bid(s) for Guidant.

3. All documents and things concerning any of the following:

    a. communications to or from J&J from November 1, 2005 until April 30, 2006 relating to J&J's or Boston Scientific's bid(s) for Guidant;

    b. information received or obtained by you from November 1, 2005 until April 30, 2006 relating to J&J's or Boston Scientific's bid(s) for Guidant; and

3

  c. information received or obtained by you from November 1, 2005 until April 30, 2006 regarding preventing XIENCE V or any rapamycin eluting, or everolimus eluting, or "-limus" eluting, or "-olimus" eluting stent from being made, used, marketed or sold.

4. All documents and things concerning any of the following:

  a. A January 23, 2006 A.G. Edwards & Sons, Inc. report entitled "Healthcare Industry Note: The Game May Be Far From Over";

  b. A March 27, 2006 A.G. Edwards & Sons, Inc. report entitled "Newsbeats: How's This?"; and

  c. A January 23, 2006 International Herald Tribune headlined "J&J works to discredit rival offer for Guidant" (attached hereto)

including any documents and things relied on, considered, identified in, or reviewed in connection with the preparation of the January 23, 2006 report, the March 27, 2006 report, or the January 23, 2006 International Herald Tribune article.

4

## INTERNATIONAL
# Herald Tribune

### J&J works to discredit rival offer for Guidant

**By Avram Goldstein Bloomberg News**
MONDAY, JANUARY 23, 2006

WASHINGTON Johnson & Johnson, facing a deadline on Tuesday for raising its bid to acquire the cardiac device maker Guidant, is trying to sow doubts among investors about Boston Scientific's rival offer, according to analysts.

Johnson & Johnson, the world's biggest maker of medical devices, and its advisers told securities analysts last week that Boston Scientific would borrow too much for the deal, according to analysts at Prudential Equity Group and A.G. Edwards.

J&J also said Boston Scientific had been making unrealistic financial projections to justify its $27 billion offer to buy Guidant, almost $3 billion more than Johnson & Johnson's.

"J&J is communicating to the Street that Boston Scientific's $80-a-share offer for Guidant is fraught with uncertainty," Lawrence Biegelsen, an analyst with Prudential in New York, said in a note to clients sent on Friday. The campaign, he said, suggests "that J&J is still very interested in acquiring Guidant and that J&J will likely increase its offer at least one more time."

The Guidant transaction would be the biggest purchase of a medical device company. Guidant, the second-largest maker of implantable defibrillators and pacemakers, behind Medtronic, is developing a cardiac stent that would pose a competitive threat to rival products of J&J and Boston Scientific, the world's biggest maker of heart stents, tiny metal sleeves used to clear artery blockages.

A spokesman for J&J, Jeffrey Leebaw, and for Guidant, Steven Tragash, declined to comment.

J&J shares fell $1.37, or 2.2 percent, to close last week at $60.80 in New York Stock Exchange composite trading. Guidant dropped 17 cents, to $75.95. Boston Scientific declined 36 cents, or 1.5 percent, to close at $23.59.

Guidant said Tuesday that Boston Scientific's offer of about $27 billion, or $80 a share, of which $42 would be in cash and $38 in stock, was "superior" to J&J's bid of $24.2 billion, or $71 a share, consisting of $40.52 in cash and the rest in J&J shares

Johnson & Johnson's campaign consists of telling analysts and shareholders that Boston Scientific is in over its head and is tempting patent litigation that may undercut Boston Scientific's plans.

"They're trying to tell all of us that there are patents out there that they have that they feel can stop Boston Scientific," said Jan David Wald, an analyst with A.G. Edwards. Wald said he had been called by a Johnson & Johnson employee, whom he declined to name.

Johnson & Johnson told analysts it was considering filing patent infringement lawsuits over stent drug coatings to keep Boston Scientific and its bidding partner, Abbott Laboratories, from profiting from the new Guidant devices, according to Biegelsen of Prudential.

Drug coatings on stents are designed to keep tissue growth from clogging blood vessels again.

Abbott agreed to contribute $6.4 billion to the Boston Scientific bid and acquire Guidant's vascular business including the new cardiac stent.

Abbott shares lost $1.19, or 2.9 percent, on Friday to close the week at $40.35.

Patent infringement lawsuits over stent drug coatings have "no bearing on our proposed acquisition of Guidant," a spokesman for Boston Scientific, Paul Donovan, said. "Unfortunately, threats of legal action are commonplace in our industry."

Boston Scientific and J&J have been fighting in court for years over patent-infringement cases related to stent design. At the moment, the two companies are alone in the U.S. stent market, with Boston Scientific holding a 55 percent share.

Abbott, Guidant and Medtronic are all developing competing products coated with drugs similar to the one that Johnson & Johnson's stent uses.

The potential for Johnson & Johnson to prevent Abbott and Boston Scientific from marketing Guidant's next-generation heart stent "could give the Guidant board pause for approving a Boston Scientific-Guidant merger," Biegelsen said. "J&J claims that two of its patents may be infringed if a company tries to launch a drug-eluting stent coated with" Abbott's zotarolimus and Guidant's everolimus, he wrote.

After the Guidant board declared Boston Scientific's bid superior, Johnson & Johnson issued a statement calling the proposal a "highly dilutive and leveraged transaction based on extremely aggressive business projections."

The statement said the Boston Scientific bid "will not provide $80 per share in value to Guidant shareholders."

Boston Scientific initially bid $25 billion on Jan. 8, a month after declaring its intention to make an offer.

ADVERTISER LINKS

**Pacemaker Recall List**
List of over 40 Guidant pacemakers that have been recalled
www.schmidtandclark.com/Guidant

**Guidant Recall Attorneys**
Free Nationwide Review Talk to an attorney Toll-free 1 800 223-3784
www.pulaskilawfirm.com

**Guidant Lawsuit**
News on the Guidant recall of heart defibrillator and pacemaker devices
guidant.martinandjones.com

**St. Jude Symmetry Device**
Problem w/artery clogging after a bypass graft? Call for free consult
www.copretz.com

IHT   Copyright © 2006 The International Herald Tribune | www.iht.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 9, 2007, I caused to be served by hand delivery the foregoing document and electronically filed the same with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following:

Steven J. Balick, Esquire
Ashby & Geddes
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899

I hereby certify that on February 9, 2007, I caused to be sent by Federal Express the foregoing document to the following non-registered participant:

David T. Pritikin
Russell E. Cass
Sidley Austin LLP
One South Dearborn
Chicago, IL 60603

Frederick L. Cottrell, III (#2555)
Cottrell@rlf.com

RLF1-3113498-1